IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| **DARRYL LERAY GIBBS, Individually and as Personal Representative of the Estate of Darryl Jackson and on behalf of Darryl Jackson's surviving heirs and statutory wrongful death beneficiaries,** § § § § § § § §  Plaintiff, § § vs. § § **DEERE & COMPANY d/b/a JOHN DEERE,** § § Serve: The Corporation Company § 147 Spring Street § Little Rock, Arkansas 72201 § § And § § **GERINGHOFF MANUFACTURING LLC,** § § Serve: Kevin Kouba § 3405 Energy Drive § Saint Cloud, Minnesota 56304 § § **Defendants.** § § | Civil Action No. _____ Jury Trial Demanded This case assigned to District Judge_____ And to Magistrate Judge_____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Darryl Leray Gibbs, Individually and as Personal Representative of the Estate of Darryl Jackson and on behalf of Darryl Jackson's surviving heirs and statutory wrongful death beneficiaries, for his Complaint against Deere & Company d/b/a John Deere and Geringhoff Manufacturing LLC (collectively "Defendants") under the laws of the State of Arkansas, makes the following allegations:

**PARTIES, JURISDICTION, AND VENUE**

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 1
18052

1. Plaintiff Darryl Leray Gibbs is a resident of Arkansas ("Plaintiff Gibbs" or "Plaintiff" or "Mr. Gibbs"). Plaintiff Gibbs was duly appointed Administrator of the Estate of Darryl Jackson by Letters Testamentary of the Probate Court of Ashley County, Arkansas ("The Probate Court"), Case No. PR-2019-8-2 on January 28, 2019, including for purposes of pursuing a wrongful death action and an action for all damages arising from the injury and death of Darryl Jackson. Mr. Gibbs is the surviving son of Darryl Jackson ("Mr. Jackson"). Leakeasha Spikes is the surviving daughter of Mr. Jackson. The Probate Court also determined that Darryl Leray Gibbs and Leakeasha Spikes are the sole heirs and wrongful death beneficiaries of Darryl Jackson. Plaintiff is asserting claims for damages herein on behalf of the Estate of Darryl Jackson and on behalf of all heirs and wrongful death beneficiaries of Darryl Jackson, namely himself and Leakeasha Spikes.

2. Plaintiff Gibbs, as the named personal representative of the decedent, is the proper party to maintain an action for the wrongful death of Darryl Jackson under Ark. Code Ann. § 16-62-101 (West) ("Arkansas's Survival Action Statute").

3. Defendant Deere & Company is a foreign corporation, formed in the state of Delaware, and that conducts business in the State of Arkansas. Upon information and belief, Deere & Company does business as, and at all relevant times has done business as, John Deere. Pursuant to Fed. R. Civ. P. 4(e)(1), service can be affected according to the law of the state where this District Court is located, Arkansas. Pursuant to Ark. R. Civ. P. 4, Deere & Company can be served with process by serving its agent for service of process, The Corporation Company, 147 Spring Street, Little Rock, Arkansas 72201.

4. Defendant Geringhoff Manufacturing LLC ("Geringhoff") is a foreign corporation, formed in the State of Nevada, that conducts business in the State of Arkansas. Pursuant to Fed. R. Civ. P. 4(e)(1), service can be affected according to the law of the state

where the District Court is located, Arkansas. Pursuant to Ark. R. Civ. P. 4, Geringhoff can be served with process by serving its agent for service of process, Kevin Kouba, 3405 Energy Drive, Saint Cloud, Minnesota, 56304.

5. Deere & Company and Geringhoff are foreign corporations, and Plaintiff is a citizen of Arkansas. Therefore, because the amount in controversy exceeds $75,000, this Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332(a).

6. A substantial part of the events giving rise to the claim occurred in Ashley County, Arkansas. Ashley County, Arkansas is within this Judicial District and within the El Dorado Division of this Judicial District. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS

7. On or about August 28, 2018, Darryl Jackson ("Jackson") was working on a corn farm in Wilmot, Ashley County, Arkansas. A co-worker ("the Operator") was harvesting corn with a Deere & Company combine, believed to be a John Deere brand, S670 model combine (the "Combine"), and a Geringhoff corn header, believed to be a Rota Disc Elite XL model corn header (the "Corn Header").

8. At all times material hereto, Deere & Company was in the business of and did design, develop, manufacture, test, promote, label, advertise, market, distribute, supply, and/or sell John Deere brand combines, including but not limited to the Combine involved in this case.

9. At all times material hereto, Geringhoff was in the business of and did design, develop, manufacture, test, promote, label, advertise, market, distribute, supply, and/or

sell Geringhoff brand corn headers for use with combines, including but not limited to the Corn Header involved in this case.

10. Defendants supplied their respective products in question in a defective condition which rendered each such product unreasonably dangerous.

11. At all relevant times, Deere & Company solicited and conducted business in Arkansas, derived substantial revenue from such business, and expected or should have expected that its acts would have consequences within Arkansas.

12. At all relevant times, Geringhoff solicited and conducted business in Arkansas, derived substantial revenue from such business, and expected or should have expected that its acts would have consequences within Arkansas.

13. On or about August 28, 2018, upon information and belief, it was determined that the Corn Header had "gotten into a bind," causing the Operator to bring the Combine to a stop and seek the assistance of Mr. Jackson.

14. Upon information and belief, the Operator left the seat of the Combine and therefore, both the Combine and Corn Header should have shut down completely as a result of a seat interlock on the Combine. The Combine and Corn Header were not, but should have been, designed with interlocks to cause both machines to shut down completely upon the cessation of forward motion of the Combine and Corn Header.

15. The Combine and Corn Header caused Mr. Jackson's legs to be pulled into the Corn Header's cutting blades by its gathering chains. Both of Mr. Jackson's legs were amputated.

16. Mr. Jackson remained conscious during, and, for an extended period of time after, the amputation of both of his legs, but eventually perished as a result of his injuries.

## COUNT I –
## NEGLIGENCE AND (STRICT) PRODUCTS LIABILITY OF DEERE & COMPANY

17. The preceding factual statements and allegations are incorporated by reference as though fully set forth herein.

18. Deere & Company had a duty to use ordinary care in its design, selection of materials used in and in its manufacture, assembly, inspection and testing of the Combine in order to protect those who would use it, or be in the area of its use, from unreasonable risk of harm while being used for its intended purpose, or while being used for any purpose which should reasonably have been expected by Deere & Company.

19. Upon information and belief, the Combine suffered from a manufacturing defect that caused the seat interlock to malfunction and that permitted the Combine to continue to transmit power to the Corn Header and its cutting blades and gathering chains, despite the Operator leaving the seat of the Combine. This defect departed from the intended designand made the Combine more dangerous than consumers expected the product to be.

20. Upon information and belief, the Combine was a John Deere S670 model combine, which was designed/manufactured/distributed/marketed by Deere & Company. The Combine was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use, and was defectively and negligently designed. The Combine continued to turn the cutting blades and gathering chains on the Corn Header despite the Corn Header being stopped with no forward movement. A safer alternative design was available that would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and such alternative design was economically and technologically feasible at the time the product left the control of Deere & Company by the application of the then-existing or reasonably achievable scientific knowledge.

The Combine should have had a separate and independent safety interlock that would have stopped transmission of power to the Corn Header, and therefore prevented the cutting blades and gathering chains on the Corn Header from turning, when the Combine lacked forward motion or decelerated to *de minimis* forward motion, in order to protect persons in the vicinity of the Corn Header when active harvesting was not in process, and therefore it could be expected that individuals would be in the vicinity of the Corn Header and at risk for being caused to be pulled into the Corn Header. The Combine had no such interlock. Such an interlock would have provided a crucial measure of safety in the event of a failure of the seat interlock on the Combine, or in the event the operator of the Combine did not leave the seat of the Combine, or in the event a co-worker or other individual were in the vicinity of the Corn Header during the delay between the cessation of forward motion and the seat interlock shutting down transmission of power to the Corn Header.

21. The product in question was not unavoidably unsafe. There was a feasible alternative design which would have accomplished the intended purpose of the product at a lesser risk, considering (1) the magnitude of the risk from intended or foreseeable uses of the product which risk the alternative avoids, (2) the comparative cost of the product and the alternative, (3) the respective benefits of the product and the alternative, and (4) the relative safety of the product and the alternative. The value of the subject product as designed did not outweigh the risk at the time of distribution, considering the value and benefit, the seriousness of the risk and the likelihood of the benefit and risk.

22. Deere & Company had a duty to give reasonable and adequate warnings of dangers inherent or reasonably foreseeable in the use of the product. Deere & Company knew or had reason to know of likely danger of its Combine when used for the purpose for which it was

designed (or other foreseeable use) and had a duty to give a reasonable and adequate warning of such dangers.  Deere & Company also had a duty to give reasonable and adequate instructions with respect to the conditions and methods of safe use of the product in question, given those dangers reasonably foreseeable to Deere & Company in the product's use. Defendant Deere & Company failed to give adequate warnings of the product's dangers that were known, or by the application of reasonably developed human skill and foresight should have been known to it, and failed to give adequate instructions to avoid such dangers, and such failure(s) rendered its product unreasonably dangerous as marketed.  Defendant Deere & Company knew or should have reasonably foreseen a potential risk of harm presented by the Combine (including when used with a corn header) but negligently marketed the Combine without adequate warning of the danger or providing proper and adequate instructions for safe use.  The Combine possessed a risk of harm that was either inherent in the product or that might arise from the intended or reasonably anticipated use of the product, or bystanders to the use thereof. Defendant Deere & Company knew or should have reasonably foreseen the risk of harm at the time the product was marketed, the product possessed a marketing defect, the absence of proper warnings and/or instructions rendered the product unreasonably dangerous to the ultimate user of the product, and the failure to properly warn or instruct was a causative nexus in Mr. Jackson's injury/death and Plaintiff's damages.   There is a presumption that the warning, if adequate, would have been read and heeded.

       23.    Therefore, Deere & Company was negligent in its design, manufacture and marketing of its Combine.  That is, Deere & Company failed to do that which a person of ordinary prudence would have done under the same or similar circumstances or did that which a person of ordinary prudence would not have done under the same or similar circumstances, and

said negligence was a proximate cause of Mr. Jackson's injury and death and the damages sought herein.

24. The Combine was supplied by Deere & Company in a defective condition, and said defective condition existed at the time it left the hands of Deere & Company and rendered the product unreasonably dangerous. The Combine was dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the Combine, or such person who otherwise comes into contact with it.

25. Therefore, Deere & Company's product, namely the Combine, suffered from manufacturing, design, and marketing defects for which Deere & Company is strictly liable and said defects were a proximate cause of Mr. Jackson's injury and death and the damages sought herein.

## COUNT II - NEGLIGENCE AND (STRICT) PRODUCTS LIABILITY OF GERINGHOFF

26. The preceding factual statements and allegations are incorporated by reference as though fully set forth herein.

27. Geringhoff had a duty to use ordinary care in its design, selection of materials used in and in its manufacture, assembly, inspection and testing of the Corn Header in order to protect those who would use it, or be in the area of its use, from unreasonable risk of harm while being used for its intended purpose, or while being used for any purpose which should have reasonably been expected by Geringhoff.

28. Upon information and belief, the Corn Header was a Geringhoff Rota Disc Elite XL manufactured/distributed/marketed by Geringhoff. The Corn Header was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use, and was defectively and negligently designed. The Combine did not have the proper

safety mechanisms to prevent the cutting blades and gathering chains from turning when the Corn Header had no forward motion. A safer alternative design was available that would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and such alternative design was economically and technologically feasible at the time the product left the control of Geringhoff by the application of the then-existing or reasonably achievable scientific knowledge. For example, the Corn Header should have had a separate and independent safety interlock that would have stopped the turning of its gathering chains and cutting blades, when the Corn Header lacked forward motion or decelerated to *de minimis* forward motion, in order to protect persons in the vicinity of the Corn Header when active harvesting was not in process, and therefore it could be expected that individuals would be in the vicinity of the Corn Header and at risk for being caused to be pulled into the Corn Header. The Corn Header had no such interlock. Such an interlock would have provided a crucial measure of safety in the event of a failure or absence of a seat interlock on the associated combine, or in the event the operator of the associated combine did not leave the seat of the combine, or in the event a co-worker or other individual were in the vicinity of the Corn Header during the delay between the cessation of forward motion and a seat interlock shutting down transmission of power to the Corn Header.

29. The product in question was not unavoidably unsafe. There was a feasible alternative design which accomplished the intended purpose of the product at a lesser risk, considering (1) the magnitude of the risk from intended or foreseeable uses of the product which risk the alternative design avoids, (2) the comparative cost of the product and the alternative, (3) the respective benefits of the product and the alternative, and (4) the relative safety of the product and the alternative. The value of the subject product as designed did not outweigh the

risk at the time of distribution, considering the value and benefit, the seriousness of the risk and the likelihood of the benefit and risk.

30. Geringhoff had a duty to give reasonable and adequate warning of dangers inherent or reasonably foreseeable in the use of the product and in a manner that Geringhoff should reasonably have foreseen.  Geringhoff knew or had reason to know of likely dangers of its Corn Header when used for the purpose for which it was designed (or other foreseeable use) and had a duty to give a reasonable and adequate warning of such dangers.  Geringhoff also had a duty to give reasonable and adequate instructions with respect to the conditions and methods of safe use of the product in question, given those dangers reasonably foreseeable in the product's use. Geringhoff failed to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known to it, and failed to give adequate instructions to avoid such dangers, and such failure(s) rendered its product unreasonably dangerous as marketed.  Defendant Geringhoff knew or should have known of a potential risk of harm presented by the Corn Header but negligently marketed it without adequate warning of the danger or providing proper and adequate instructions for safe use.  The Corn Header possessed a risk of harm that was either inherent in the product or that might arise from the intended or reasonably anticipated use of the product, or bystanders to the use thereof. Defendant Geringhoff knew or should have reasonably foreseen the risk of harm at the time the product was marketed, the product possessed a marketing defect, the absence of proper warnings and/or instructions rendered the product unreasonably dangerous to the ultimate user of the product, and the failure to properly warn or instruct was a causative nexus in Mr. Jackson's injury/death and Plaintiff's damages.   There is a presumption that the warning, if adequate, would have been read and heeded.

31. Therefore, Geringhoff was negligent in its design and marketing of the Corn Header. That is, Geringhoff failed to do that which a person of ordinary prudence would have done under the same or similar circumstances or did that which a person of ordinary prudence would not have done under the same or similar circumstances, and said negligence was a proximate cause of Mr. Jackson's injury and death and the damages sought herein.

32. The Corn Header was supplied by Geringhoff in a defective condition, and said defective condition existed at the time it left the hands of Geringhoff and rendered the product unreasonably dangerous. The Corn Header was dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the Combine, or such person who otherwise comes into contact with it.

33. Therefore, Geringhoff's product, namely the Corn Header, suffered from design and marketing defects for which Geringhoff is strictly liable and said defects were a proximate cause of Mr. Jackson's injury and death and the damages sought herein.

## CAUSATION AND DAMAGES

34. Plaintiff incorporates all factual allegations made above.

35. The Combine and/or Corn Header designed/manufactured and/or marketed by Deere & Company and/or Gerringhoff, respectively, had manufacturing, design and/or marketing defect(s) that were a proximate cause of Mr. Jackson's death and the damages sought herein.

36. As a result of Defendants' negligent acts and omissions and the product defects described herein, Mr. Jackson suffered severe personal injuries resulting in death. Defendants are liable for compensatory damages arising from their negligence and from their

respective product's defects. Such damages include, but are not necessarily limited to, those described below.

37. As Administrator of the Estate of Darryl Jackson, Darryl L. Gibbs is the proper person to seek all damages inuring to, and owed to, the Estate of Darryl Jackson as well as all damages inuring to, and owed to, Mr. Jackson's heirs and statutory wrongful death beneficiaries, namely Darryl L. Gibbs and Leakeasha Spikes, and therefore Plaintiff seeks those damages in this case, including but not limited to pecuniary injuries/damages, mental anguish damages, wrongful death damages and loss of the value of Darryl Jackson's life.

38. As a result of Defendants' negligent acts and omissions and the product defects described herein, and the injury and death of their father resulting therefrom, Darryl Leray Gibbs and Leakeasha Spikes have suffered and will continue to suffer pecuniary loss (past and future), including but not necessarily limited to the loss of instruction and moral training Darryl Jackson may have given them had he lived, and loss of inheritance.

39. As a result of Defendants' negligent acts and omissions and the product defects described herein, and the injury and death of their father resulting therefrom, Darryl Leray Gibbs and Leakeasha Spikes have suffered and will continue to suffer mental anguish (past and future), that is the mental suffering resulting from such emotions, grief and despair associated with the loss of a loved one.

40. As a result of Defendant's negligent acts and omissions and the product defects described herein, Darryl Jackson suffered painful injuries and lost his life. Therefore, Darryl Leray Gibbs, as Administrator of the Estate of Darryl Jackson, seeks damages for Darryl Jackson's loss of life (damages that would compensate Darryl Jackson for the loss of the value that Decedent would have placed on his own life), conscious pain and suffering of Darryl

Jackson as a result of his injuries, and disfigurement and visible results of injuries suffered by Darryl Jackson before his death, as well as funeral expenses and any medical expenses attributable to the fatal injury.

## MALICE

41. Upon information and belief, each Defendant knew or ought to have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in injury and therefore its conduct continued with malice or in reckless disregard of the consequences from which malice may be inferred.

42. Therefore, upon information and belief, Defendants acted with malice for which they are liable for exemplary/punitive damages.

## ALTERNATIVE PLEADINGS

43. To the extent facts and/or causes of actions pled in this Original Complaint are in conflict, they are pled in the alternative.

## JURY DEMAND

44. Plaintiff respectfully demands a jury trial, the jury fee having been deposited with the Clerk of the Court.

## PRAYER

45. Plaintiff requests that Defendants be cited to appear, and that Plaintiff have judgment against Defendants for:

    i. damages as set forth above in an amount in excess of the minimum jurisdictional amount of this Court;

    ii. pre-judgment interest at the maximum rate allowed by law;

    iii. post-judgment interest at the maximum rate allowed by law;

    iv. punitive/exemplary damages;

iv. all costs of court; and

vi. such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself and those that he represents, *i.e.*, the Estate of Darryl Jackson and the surviving heirs and wrongful death beneficiaries of Darryl Jackson (Darryl Leray Gibbs and Leakeasha Spikes), are entitled to receive.

Dated: May 17, 2019

Respectfully submitted,

Corey D. McGaha
CROWDER MCGAHA, LLP
Ark. Bar No. 2003047
cmcgaha@crowdermcgaha.com
5507 Ranch Drive, Suite 202
Little Rock, Arkansas 72223
(501) 205-4026
(501) 367-8208 (fax)

John M. Padilla
PADILLA RODRIGUEZ, LLP
Texas State Bar No. 00791395
*Pro Hac Vice Motion Pending*
jpadilla@pandrlaw.com
5433 Westheimer Rd., Ste. 825
Houston, Texas 77056
(713) 574-4600
(713) 574-4601 (fax)

David Salazar
THE SALAZAR LAW FIRM
Texas State Bar No. 24060545
*Pro Hac Vice Motion Pending*
dsalazar@hurtinhouston.com
321 Heights Boulevard
Houston, Texas 77007
(281) 587-6770
(281) 857-6780 (fax)

ATTORNEYS FOR PLAINTIFF